UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Wi3, INC.,

Plaintiff,

v.

ACTIONTEC ELECTRONICS, INC.,

Defendant.

---

**DECISION AND ORDER**

14-CV-6321 EAW

## INTRODUCTION

This case was commenced by Plaintiff Wi3, Inc. ("Plaintiff") on June 11, 2014. (Dkt. 1). Plaintiff alleges that it owns United States Patent No. 6,108,331 (the "'331 Patent"). Plaintiff further alleges that Defendant Actiontec Electronics, Inc. ("Defendant") manufactures and sells products that infringe at least four claims of the '331 Patent.

Defendant has moved the Court for summary judgment on the basis that its accused products do not infringe the asserted claims of the '331 Patent either literally or under the doctrine of equivalents. (Dkt. 33). For the reasons set forth below, Defendant's motion for summary judgment is denied.

## BACKGROUND

Plaintiff filed its complaint on June 11, 2014, alleging that it owns the '331 Patent, entitled "Single Medium Wiring Scheme for Multiple Signal Distribution in Building and

1

Access Port Therefor" and issued on August 22, 2000. (Dkt. 1 at ¶ 1). The complaint alleges that Defendant manufactures and sells products known as "MoCA Network Adapters and/or Network Extenders," including specifically products with model numbers ECB2500C and WCB3000N. (*Id.* at ¶¶ 10-11). Plaintiff alleges that these products infringe "at least claims 26, 27, 29 and 30 of the '331 Patent. . . ." (*Id.* at ¶¶ 21-22). Claim 26 of the '331 Patent is an independent claim, while claims 27, 29, and 30 are dependent claims.

Defendant filed an answer to the complaint and two counterclaims on August 25, 2014. (Dkt. 13). On September 15, 2014, Plaintiff filed a motion to dismiss the counterclaims and to strike one of Defendant's affirmative defenses. (Dkt. 17). The Court entered a decision and order on November 11, 2014, granting Plaintiff's motion in part and denying it in part. (Dkt. 24). The Court referred the case to the Hon. Jonathan W. Feldman, United States Magistrate Judge, for the supervision of all pretrial matters excluding dispositive motions on November 25, 2014. (Dkt. 25). Judge Feldman granted Defendant leave to file an amended answer and counterclaims on December 3, 2014 (Dkt. 29), and Defendant filed its amended answer and amended counterclaims that same day (Dkt. 30). Plaintiff served an answer to the amended counterclaims on December 17, 2014. (Dkt. 32).

On December 23, 2014, Defendant filed a motion for summary judgment on the basis that its accused products do not infringe the asserted claims of the '331 Patent either

2

literally or under the doctrine of equivalents. (Dkt. 33). Defendant argues that its accused products are not "mounted in a communications box of a structure," a limitation found in independent claim 26 and incorporated into dependent claims 27, 29, and 30. (Dkt. 34). Plaintiff filed its opposition on January 30, 2015. (Dkt. 39). Plaintiff contests Defendant's proposed construction of the phrase "mounted in a communications box of a structure" and further argues that, at least, there is a genuine issue of material fact as to whether Defendant's accused products infringe the '331 Patent under the doctrine of equivalents. (*Id.*). Defendant filed its reply on February 13, 2015. (Dkt. 42). Oral argument on the motion was held on March 6, 2015. (Dkt. 43).

## DISCUSSION

### I.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving

party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "The grant of summary judgment is appropriate in a patent case where the standards set forth in Rule 56[] are satisfied." *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed. Cir. 1994).

## II.    Literal Infringement and Construction of Claim 26

Defendant claims it is entitled to summary judgment because its products do not literally infringe Plaintiff's patent.  Defendant's argument focuses on the language of independent claim 26, which claims:

> In an in-house signal distribution system, an access node of the in-house signal distribution system that is an access port of the in-house signal distribution system and includes:
>
> a main module mounted in a communications box of a structure in which the in-house signal distribution system is installed;
>
> a main module connector mounted on the main module and connected to a packet stream of the in-house signal distribution system, the packet stream including addressed data packets that carry respective portions of

4

at least one signal distributed by the in-house signal distribution
network;

at least one physical medium connector connected to the main module and
arranged for connection to at least one device that can receive respective
ones of the at least one signal distributed by the in-house distribution
network;

a packet handler that picks packets for the access node from the packet
stream;

the packet handler converting the picked packets back to their respective
ones of the at least one signal and sending the respective ones of the at
least one signal to a respective physical medium connector of the access
node; and

a packet stream distributor carrying the packet stream to the access node
main module connector.

(Dkt. 34-2 at Col. 9, ll. 35-61).

Defendant argues that the language used in the second paragraph of claim 26 (and
incorporated into the asserted dependent claims), specifically the phrase "a main module
mounted in a communications box of a structure in which the in-house signal distribution
system is installed," requires that the "main module" be mounted in a wall receptacle box
of the building in which the in-house signal distribution system is installed.  (Dkt. 33-1 at

5

3).  According to Defendant, its accused products do not infringe the '331 patent because they "are free-standing units that connect to the in-house wiring via a cable" and "are not 'mounted in a communications box of a structure' or any equivalent enclosure configured to be disposed in a wall of the building housing the in-house signal distribution system." (*Id.* at 4).

Defendant urges the court to find that the phrase "communications box of a structure" means "a wall receptacle box that is mounted in the wall, floor or ceiling of the building in which the in-house wiring is installed."  (Dkt. 34 at 14).  In support of this argument, Defendant relies upon the fact that Figure 1 of the '331 Patent shows a device configured to be recessed into a wall.  (*See id.* at 14-15; *see also* Dkt. 34-2 at Col. 2, ll. 32-33 ("FIG. 1 is an isometric view of the access port of the invention configured for mounting in a wall receptacle box.")).

In opposition, Plaintiff argues that the phrase "communications box of a structure" is not a term of art and does not require construction.  (Dkt. 39 at 11).  Instead, Plaintiff maintains that the phrase "communications box of a structure," when given its "ordinary and customary meaning," is "sufficiently clear for a jury to ascertain the scope of the claim."  (*Id.*).

"In construing [patent] claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point [ ] out and distinctly claim[ ] the subject matter which

6

the patentee regards as his invention. The words used in the claims are examined through the viewing glass of a person skilled in the art. In the absence of an express intent to impart a novel meaning to the claim terms, the words are presumed to take on the ordinary and customary meanings attributed to them by those of ordinary skill in the art." *Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003) (quotation and citations omitted). The ordinary and customary meaning of a claim term is "the meaning that the term would have to a person of ordinary skill in the art when read in the context of the entire patent." *FenF, LLC v. SmartThingz, Inc.*, No. 2014-1490, 2015 WL 480392, at *2 (Fed. Cir. Feb. 6, 2015). "To ascertain the scope and meaning of the asserted claims, [a court] look[s] to the words of the claims themselves, the specification, the prosecution history, and any relevant extrinsic evidence. This inquiry typically begins and ends with the intrinsic evidence. In fact, the specification is the single best guide to the meaning of the claim terms; it is usually dispositive." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217-18 (Fed. Cir. 2014).

Here, in favor of its proposed construction of the phrase "communications box of a structure," Defendant relies on Figure 1 of the patent specification, which shows a device configured for mounting in a wall receptacle box. As Plaintiff correctly argues, Defendant is improperly conflating the preferred embodiment of the patented invention illustrated by Figure 1 with a limitation of the patent's claims. "The claims, not specification embodiments, define the scope of patent protection. The patentee is entitled

to the full scope of his claims, and [the Court] will not limit him to his preferred embodiment or import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009). So, for example, it was error for a district court to import from the specification a requirement that a "stabilizer support member" be "elongated" and "longer than it is wide" because the language of the claims did not support this "narrowing structural limitation." *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1349 (Fed. Cir. 2013); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1372 (Fed. Cir. 2013) (upholding district court's refusal to limit the claim term "short-range communication protocols" to those listed in the patent). As explained by the Federal Circuit:

> To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so. One of the best ways to teach a person of ordinary skill in the art how to make and use the invention is to provide an example of how to practice the invention in a particular case. Much of the time, upon reading the specification in that context, it will become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive.

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (citation omitted).

In this case, the specification and claims of the '331 Patent demonstrate that "communications box of a structure" was not meant to be coextensive with a "wall receptacle box." The specification states that "[e]ach access port *preferably* includes a main module that extends into a recess in a wall, floor, or ceiling of a building, similar to

8

a standard receptacle box. The module can be mounted on a wall plate if the user so desires." (Dkt. 34-2 at Col. 1, ll. 52-55) (emphasis added). A person of ordinary skill in the art reading those words would understand that having the main module extend into a recess in the wall was the inventor's preferred option, but was not the only option. *See Phillips*, 415 F.3d at 1325 (although patent specification described the advantages of using baffles at acute or obtuse angles, the term "baffles" was not limited to structures extending at such angles because "[t]he fact that a patent asserts that an invention achieves several objectives does not require that each of the claims be construed as limited to structures that are capable of achieving all of the objectives.") (quotation omitted).

Moreover, several of the unasserted claims of the '331 Patent use language indicating that the main module described in those claims is intended to be recessed into the wall of a structure. For example, independent claim 1 claims "an in-house signal distribution system including . . . a main module *mounted in a wall of the structure*. . . ." (Dkt. 34-2 at Col. 6, ll. 59-66). The use of this language in claim 1 but not in claim 26 implicates the "doctrine of claim differentiation" which "stems from 'the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope.'" *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) (quoting *Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971–72 (Fed. Cir. 1999)); *see also Toro Co. v. White*

*Consol. Indus., Inc.*, 199 F.3d 1295, 1302 (Fed. Cir. 1999) ("The doctrine of claim differentiation can shed light on the proper scope to be afforded a claim limitation. . . ."). The use of the phrase "mounted in a wall of the structure" in some claims of the '331 Patent contrasted with the use of the phrase "mounted in a communications box of a structure" in claim 26 supports the conclusion that a "communications box of a structure" is not limited to a wall receptacle box.

At the oral argument on the instant motion, Defendant argued for the first time that paragraph 12 of the Detailed Action issued by the Patent and Trademark Office with respect to the application for the '331 Patent on September 8, 1999 (Dkt. 34-3 at 4-15), further supports its motion. This argument is unpersuasive for multiple reasons. First, it was raised for the first time at oral argument and the Court is therefore not obligated to consider it. *See, e.g., Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 927 (Fed. Cir. 2012) (declining to reach argument raised for the first time at oral argument); *Henry v. Dep't of Justice*, 157 F.3d 863, 865 (Fed. Cir. 1998) (argument raised for the first time at oral argument "comes too late").

Second, the language of paragraph 12 does not, on its face, support the argument that the phrase "communications box of a structure" should be limited to a "wall receptacle box." Paragraph 12 is a "statement of reasons for the indication of allowable subject matter" and states that the main module of the patented technology contains "a connection with one end being accessible from within the communications box for

10

connection to the electronic device and another end being accessible from without the communications box for connection to an external device by user." (Dkt. 34-3 at 13).  It is not clear to the Court on the current record what the term "electronic device" refers to in this context, as opposed to "an external device."  Moreover, Defendant has not presented a cogent explanation for why a communications box would need to be mounted within a wall in order to have one of the connections terminate within it and one of the connections terminate without it.

In sum, Defendant has not shown that a person of ordinary skill in the art would construe the phrase "communications box of a structure" as limited to a "wall receptacle box."  Nothing in the language of the claims of the '331 Patent or within the specification supports requiring a "communications box of a structure" to be recessed within the wall, ceiling, or floor of the structure, as urged by Defendant.  Instead, the Court finds that the phrase "communications box of a structure in which the in-house signal distribution system is installed" should be read to have its ordinary and customary meaning – namely, a communications box connected to the in-house signal distribution system of a structure.  As such, and on the current record, the Court cannot find as a matter of law that the accused products do not literally infringe the '331 Patent.

## III.  Doctrine of Equivalents

Defendant makes a secondary argument in favor of summary judgment that assumes the Court will adopt its proposed construction of the phrase "communications

11

box of a structure." Specifically, Defendant argues that Plaintiff is prohibited from establishing infringement under the doctrine of equivalents by the doctrine of prosecution history estoppel. (Dkt. 34 at 12-13). The Court need not reach this argument because Defendant has not shown it is entitled to summary judgment with respect to literal infringement. *See, e.g., Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1370-71 (Fed. Cir. 2001); *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456 (Fed. Cir. 1988); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 69 F. Supp. 2d 309, 317 (D. Conn. 1998).

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is denied. The case shall proceed in accordance with the scheduling order entered on January 22, 2015. (Dkt. 37).

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      March 24, 2015
            Rochester, New York